IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. PX-17-0382 |
| | * | |
| LUIS ARNOLDO FLORES-REYES, | * | |
|    a/k/a "Maloso," | * | |
|    a/k/a "Lobo," | * | |
|       Defendant. | * | |
| | * | |
| | * | |

*******

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The Government submits this memorandum in anticipation of the sentencing of the defendant, Luis Flores-Reyes (the "Defendant"). The sentencing hearing is scheduled for Wednesday, February 22, 2023 at 10:00 a.m.

A jury found the Defendant guilty on four counts in the Twelfth Superseding Criminal Indictment (the "Indictment): Count 1 (Conspiracy to Participate in a Racketeering Enterprise, in violation of 18 U.S.C. § 1962(d)); Count 7 (Murder in Aid of Racketeering, in violation of 18 U.S.C. §1959(a)(1)); Count 8 (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846); and Count 10 (Conspiracy to Interfere with Interstate Commerce by Extortion, in violation of 18 U.S.C. § 1951(a)).

The Government respectfully requests that the Court sentence the Defendant to two concurrent terms of life imprisonment for Counts 1 and 7 to run concurrently with a 240-month imprisonment term for Count 8, and a 78-month imprisonment term for Count 10. Although the Government anticipates that supervised release will not be necessary, the Government nevertheless asks the Court to impose a sentence of five years of supervised release in the unlikely event that the Defendant is ever released from prison.

The Government also seeks $17,130.92 in restitution to pay for expenses associated with the murder of Raymond Wood. The Government does not seek a fine. The Government believes that this sentence is sufficient, but not greater than necessary, to achieve the sentencing goals set forth in 18 U.S.C. § 3553.

## BACKGROUND

The Government presented the following evidence at trial. From at least 2014 through January 2018, the Defendant was a member of MS-13, which is an international criminal organization. PSR ¶¶ 6, 15-16. As a member of MS-13, the Defendant agreed with other members of MS-13 "to engage in a pattern of racketeering activity, including murder, extortion, money laundering, and distribution of controlled substances, including marijuana and cocaine, all in order to further the interests of the enterprise." PSR ¶ 16. The Defendant was a Homeboy in the Sailors Clique and at two different points in time was the "First Word" for the Sailors Clique. PSR ¶ 15. During his second stint as First Word, the Defendant "exercised authority over the gang's activities throughout the United States, from New York to Texas." PSR ¶ 15. Relevant to this sentencing, the Government provided evidence at trial that the Defendant: (1) aided and abetted the murders of two individuals, (2) aided and abetted an attempted murder, (3) oversaw an extortion scheme, and (4) participated in a drug-trafficking conspiracy.

### I. Murders

During the time period charged in the Indictment, the Defendant helped orchestrate two murders to further the enterprise.

#### a. Brandon Sorto Murder

On July 30, 2016—while the Defendant was First Word of the Sailors Clique—members of that clique murdered Brandon Sorto. Cooperating witness Carlos Tejada-Cruz testified that MS-

13 members suspected that Mr. Sorto belonged to a rival gang. Because of this suspicion, Tejada-Cruz and other MS-13 members sought permission from the Defendant and other MS-13 members to kill Sorto. Tejada-Cruz testified that the Defendant participated on a call where the Homeboys authorized the murder. After receiving permission, MS-13 members—including Tejada-Cruz—stabbed Sorto to death.

      b.      **Raymond Wood Murder**

The Defendant also aided and abetted the murder of Raymond Wood in Lynchburg, Virginia on March 27, 2017. The murder served as the basis for the Defendant's conviction under 7 and the special finding against him under Count 1. The evidence at trial established that MS-13 member Josue Moises Coreas-Ventura ("Ventura") fled to Lynchburg after committing a murder in Gaithersburg, Maryland. The Defendant knew that Ventura was living in Lynchburg in 2017. Ventura, the Defendant, and other MS-13 Homeboys participated in a regular WhatsApp group chat in 2017. At some point, Ventura identified Wood as a target that he wished to kill. He made a voice recording where he said, "[W]e have a little chicken watched you know, in a while we're gonna go do a stew you know, and yeah we're gonna go pluck that chicken you know. . . . And we're gonna establish here like the clique's turf in this area where I am, because we don't have turf here you know." Trial Ex. B54c.

Ventura obtained approval to kill Wood from the Maryland and Northern Virginia Homeboys. On March 27, 2017, multiple MS-13 members traveled from Maryland to Lynchburg, Virginia to kill Wood. PSR ¶ 20. The Defendant gave members of the Sailors Clique his car to that they could drive to Lynchburg. PSR ¶ 20. He also monitored their movements during the trip. Ventura and other members of MS-13 eventually stabbed Wood to death. PSR ¶ 20.

## II. Attempted Murder

The evidence at trial also established that the Defendant authorized an attempted murder in Houston, Texas in January 2018. PSR ¶ 23. On January 25, 2018, the Defendant talked to other MS-13 members about purchasing guns to get revenge on a rival gang. PSR ¶ 23. Two days later, the Defendant told members of MS-13 located in Houston that they needed to kill rival gang members to be promoted. PSR ¶ 23. On January 28, 2018, Houston-based members of MS-13 reported that they had shot at and attempted to kill suspected rival gang members. PSR ¶ 23. The Defendant refused to grant promotions unless proof of a murder was presented to him. PSR ¶ 23.

## III. Extortion

As a leader in the Sailors Clique, the Defendant directed lower-ranking members of MS-13 to impose and collect extortion payments from businesses in the Langley Park area. PSR ¶ 24. MS-13 refers to these extortion payments as "rents." PSR ¶ 24. If a business refused to pay rents, MS-13 members threatened violence or even death. PSR ¶ 24.

## IV. Drug Trafficking

The evidence at trial established that one of the ways that the Sailors Clique made money was through the sale of marijuana and cocaine. PSR ¶ 25. Jose Sorto Vasquez testified at trial that the Defendant provided him with cocaine and marijuana to sell on behalf of the gang. Sorto-Vasquez participated in controlled buys with the Defendant, and the Government introduced photographs from those buys at trial. The Defendant, along with other high-ranking members of MS-13, collected the proceeds of the drug sales and used those proceeds to further the gang's interests. PSR ¶ 25.

**STATUTORY SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)**

A district court must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). After calculating the range, it must consider the § 3553(a) factors before imposing the sentence. *Id.* at 49-50.

The statutory factors for the Court's consideration under 18 U.S.C. § 3553(a) include: (1) the nature and circumstances of the offense and history and characteristics of the defendant and (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public and provide the defendant with needed services. "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4; *see also* 18 U.S.C. § 3661. "If the district court decides to impose a sentence outside the guidelines range, it must ensure that its justification supports 'the degree of the variance.'" *United States v. Evans,* 526 F.3d 155, 161 (4th Cir. 2008) (quoting *Gall,* 552 U.S. at 51). The district court is given "some latitude," and "a degree of deference," to tailor a particular sentence to the circumstances. *United States v. Green,* 436 F.3d 449, 456-57 (4th Cir. 2006); *United States v. Moreland,* 437 F.3d 424, 433 (4th Cir. 2006).

**I.    The Court must impose a life sentence for Count 7.**

The jury convicted the Defendant on Count 6 of VICAR murder, in violation of 18 U.S.C. § 1959(a)(1). A defendant convicted under this statute must be punished by death or life imprisonment. Because the Government in this case did not seek the death penalty, the maximum and minimum (i.e., mandatory) penalty for Count 7 is life imprisonment. Defendant's counsel contends that the statute permits the Court to impose a fine instead of either death or life

imprisonment. The Fourth Circuit, however, has held that "[u]nder the plain language of § 1959(a)(1), Congress has authorized two penalties—and only two penalties—for the crime of murder in aid of racketeering: 'death or life imprisonment.'" *United States v. Under Seal*, 819 F.3d 715, 720 (4th Cir. 2016); *see id.* at n.2 (noting that "a person convicted of murder in aid of racketeering is also subject to a fine" but that explaining that "we do not believe Congress intended a fine to be a stand-alone penalty for committing this offense").[1]

### II. The Court should impose a concurrent life sentence for Count 1.

The Court should impose a concurrent term of life-imprisonment on Count 1, a sentence which is within the applicable Guidelines.

#### a. Guidelines Calculation

The Government agrees with the Presentence Report that the Adjusted Offense Level is 43 because murder was one the underlying racketeering activities and the Defendant was a leader in MS-13. PSR ¶¶ 36, 38, 40, 64-66. The Government also agrees that the Defendant's Criminal History Category is III. PSR ¶ 79. The Guidelines Range for Count 1 is therefore life imprisonment. Under the relevant § 3553(a) factors, a life sentence is appropriate.

---

[1] Other circuits have also rejected this argument. *See, e.g.*, *United States v. Rollness*, 561 F.3d 996, 998 (9th Cir. 2009) (finding that the statute requires that a court "imposes a minimum sentence of life imprisonment for VICAR murder"); *United States v. Carson*, 455 F.3d 336, 385 n.44 (D.C. Cir. 2006) (court "reach[ed] the common sense conclusion that the VICAR statute does not permit a fine to be levied in lieu of imprisonment or death"); *United States v. James*, 239 F.3d 120, 127 (2d Cir. 2000) ("We see no basis for concluding that Congress intended the unlikely result that, unless there were acceptable grounds for a downward departure, a judge was free to reject a death sentence or life imprisonment for a defendant convicted under 18 U.S.C. § 1959(a)(1), but only by sentencing that defendant to a fine without prison time.").

      **b.**      **Relevant § 3553(a) Factors**

      **1.**      **§ 3553(a)(1):  Nature and Circumstances of the Offense**

The Defendant committed himself to an international criminal enterprise. He played a leading role in the Sailors Clique of MS-13 and its reign of terror in Maryland and elsewhere. Cooperating witnesses testified at trial about how—during his time as First Word and Homeboy—the Defendant authorized murders.

      **2.**      **§ 3553(a)(2)(A):  Seriousness of the Offense**

As found in the jury special finding, the Defendant killed a child, Raymond Wood. Wood's death is especially tragic because he had no connections to MS-13. As Beford County Investigator Jon Maddox testified at trial, that area had no MS-13 presence before Ventura moved there. This murder shows how MS-13 members seek to bring their criminal activities to even the most rural areas of the country. The Defendant took the initiative with respect to this murder, including providing his car so that his associates could drive from Maryland to Virginia.

      **3.**      **§ 3553(a)(2)(B):  Deterrence**

A life sentence will serve the purposes of specific and general deterrence. As to specific deterrence, on October 1, 2002, the Defendant stabbed a victim who he suspected to be a member of a rival gang several times at a billiards hall in Wheaton, Maryland. PSR ¶ 75. He was convicted of first-degree assault, conspiracy to commit first-degree assault, and possession of a concealed weapon. PSR ¶ 75. He was sentenced on May 20, 2003 to twelve years of imprisonment and released on May 7, 2014. PSR ¶ 75. On December 22, 2002, the Defendant—along with several other individuals—assaulted a victim near a Bank of America in Wheaton, Maryland. PSR ¶ 76. The Defendant was convicted of first-degree assault. PSR ¶ 76. On October 20, 2003, the Defendant was sentenced to 17 years of imprisonment to run concurrent with any sentence being

served. PSR ¶ 76. He was also released on this charge on May 7, 2014. PSR ¶ 76. Despite the long sentence that he previously served, the Defendant jumped back into the criminal world upon release.

As to general deference, MS-13 members will know that if they commit murders for the gang, they may well end up spending the remainder of their lives in prison.

### 4. § 3553(a)(6): Sentencing Disparities

Lastly, as to the need to avoid unwarranted sentencing disparities, the Court has already sentenced co-defendants Alvarado-Requeno, Contreras-Avalos, and Corea Diaz to life sentences for RICO conspiracy convictions where murder was one of the underlying racketeering activities this murder. There is no justification for giving the Defendant a lesser sentence.

### III. The Court should impose a concurrent two-hundred and forty-month sentence on Count 8, which is the statutory maximum.

#### a. Guidelines

The Government agrees with the Presentence Report's finding that the Adjusted Offense Level for Count 10 is 47. PSR ¶ 53. The Presentence Report correctly determined that the Base Offense Level is 43. PSR ¶ 53. Specifically, the cross reference under USSG §2D1.1(d)(1) applies because as part of the drug conspiracy, Wood was killed under circumstances that would constitute murder under 18 U.S.C. § 1111. PSR ¶ 53.

In determining for sentencing whether actions of co-conspirators may be attributed to a defendant, the Guidelines provide that "in the case of a jointly undertaken criminal activity . . ., [of] all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction [or] in preparation for that offense." USSG § 1B1.3(a)(1)(B); *see United States v. Montgomery*, 262 F.3d 233, 249 (4th Cir. 2001) ("The guidelines direct that in sentencing drug offenders, the court must

8

enhance the sentence when a killing occurs in the course of a drug trafficking conspiracy 'under circumstances that could constitute murder under 18 U.S.C. § 1111.'") (citation omitted).  To consider whether this cross-reference applies, the court must consider "all acts and omissions of others that were – (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. 1B1.3(a)(1)(B). The evidence at trial established that the Defendant, Ventura, and other members of MS-13 conspired to kill Raymond Wood. As Ventura explained in his voice note, he wanted to kill Wood to "establish here like the clique's turf in this area . . . because we don't have turf here you know." Trial Ex. B54c. As the expert witness and facts witnesses testified at trial, the two main ways that MS-13 that generates income is by collecting rents and dealing drugs. The ruse to kidnap and murder Raymond Wood included trying to purchase marijuana from him. Therefore, it is reasonable to infer the co-conspirators agreed to kill Wood and did kill Wood to further the drug-trafficking enterprise. As a high-ranking MS-13 member at the time of the murder, it was reasonably foreseeable to the Defendant that MS-13 members would kill Wood to further the drug-trafficking enterprise.

The Court declined to apply the USSG §2D1.1(d)(1) cross-reference when sentencing co-defendant Brayan Contreras-Avalos, but there, Contreras-Avalos murdered two victims to become a Homeboy.  Here, the Defendant was already at Homeboy and the state goal of the murder was to increase the "turf" of MS-13.

The Government also agrees that a four-point enhancement applies here because as the "First Word," the Defendant was a leader in a criminal enterprise that involved five or more individuals.  PSR ¶ 56.  The Guidelines range is life.

### b. Relevant § 3553(a) Factors

Subsections § 3553(a)(1), (a)(2)(A), and (a)(2)(B) support imposing a two-hundred-and-forty month sentence here for the same reasons that the Court should impose a life sentence for Count 1. *See supra.*

### IV. The Court should impose a concurrent a 78-month sentence on Count 10, which is at the top of the Guidelines Range.

The Government agrees with the Presentence Report's finding that the Adjusted Offense Level for Count 10 is 24. PSR ¶ 40. A two-point enhancement applies here under USSG §2B3.2(b)(1) because multiple witnesses testified that the Defendant told them to use violence if extortion victims did not pay. PSR ¶ 36. A two-point adjustment under USSG §2B3.2(a) also applies here because cooperating witnesses testified at trial that the members of the extortion conspiracy threatened violence and possibly death. There was also ample testimony that the Defendant was—at various points—the First Word of the Sailors Clique and that as First Word, he led the extortion conspiracy. Additionally, more than five MS-13 members participated in the conspiracy to extort businesses in Maryland.

The Guidelines for an Adjusted Offense Level of 24 and a Criminal History Category of III is 63-78 months. Based on the relevant § 3553(a) factors, a sentence at the top of the Guidelines is appropriate.

### V. Recommended Term of Supervised Release

Although the Government is seeking life imprisonment, the Government also respectfully requests the imposition of a term of supervised release to follow any term of incarceration, to be in effect if the Defendant remains in the United States and with a condition that if he is removed, that he not illegally re-enter the United States. Although the advisory Guidelines policy statement, U.S.S.G. § 5D1.1(c), provides that "[t]he court ordinarily should not impose a term of supervised

release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment," Application Note 5 to the policy statement further notes that "[t]he court should, however, consider imposing a term of supervised release on such a defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." Here, the Defendant has illegally entered the United States previously, and as indicated in the PSR, he has close family in the Maryland area, which gives him an incentive to return. PSR ¶ 90. Thus, the Government believes that the Defendant could attempt to again reenter the United States illegally after being deported. Given the dangers his conduct has posed, the Government respectfully suggests that a term of supervised release is appropriate. *See, e.g.*, *United States v. Aplicano-Oyuela*, 792 F.3d 416, 423-27 (4th Cir. 2015) (analyzing these provisions and affirming the imposition of such a term of supervised release).

## RESTITUTION

The Government seeks an order of restitution, consistent with the co-Defendants, toward expenses incurred as a result of the murder of Raymond Wood. The Defendant is jointly and severally liable for restitution in the amount of $17,130.92.[2]

## VICTIM TESTIMONY

The Government understands that Mr. Sorto's mother wishes to speak at sentencing hearing. The Government also understands that Mr. Wood's mother would like her previously submitted statement read at this hearing.

---

[2] The Government is also filing a Restitution Memorandum for purposes of sentencing, under seal, setting forth additional details with respect to the restitution owed.

**CONCLUSION**

For the foregoing reasons, and additional information that may be presented at the sentencing hearing, the Government respectfully requests that the Court impose concurrent terms of life imprisonment on Counts 1 and 7, to run concurrently with a 240-month term of imprisonment on Count 8, to also run concurrently with a 78-month imprisonment term for Count 10, followed by 5 years of supervised release. Such a sentence is sufficient, but not greater than necessary, to achieve the purposes of sentencing.

Respectfully Submitted,

Erek L. Barron
United States Attorney

By: _____/s/_____
Christopher M. Sarma
Timothy F. Hagan Jr.
Assistant United States Attorneys

Alexander Gottfried
Trial Attorney

**CERTIFICATE OF SERVICE**

This is to certify that on this day, February __, 2023, a copy of the foregoing Government's Sentencing Memorandum was filed under seal and a copy will be sent to appropriate counsel via email.

/s/
Christopher M. Sarma
Assistant United States Attorney